STATE of Wisconsin EX REL. Luis SANTANA,
Petitioner-Appellant,

v.

Jeffrey P. ENDICOTT, Warden, and Redgranite
Correctional Institution,
Respondents-Respondents.

Court of Appeals

*No. 2005AP332. Submitted on briefs October 27, 2005.
—Decided December 14, 2005.*

2006 WI App 13

(Also reported in 709 N.W.2d 515.)

On behalf of the petitioner-appellant, the cause was submitted on the brief of *Luis Santana*, pro se.

On behalf of the respondents-respondents, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *James M. Freimuth*, assistant attorney general.

Before Snyder, P.J., Brown and Nettesheim, JJ.

¶ 1. BROWN, J.   In March 1996, Luis Santana was found guilty of two drug offenses. He neither perfected an appeal nor sought postconviction remedies subsequent to his convictions. Years later, his direct appeal rights having long since expired, Santana sought habeas corpus relief in the circuit court. He requested reinstatement of his right to proceed under WIS. STAT RULE 809.30 (2003–04)[1] on the ground of ineffective assistance of appointed counsel. The circuit court dismissed the petition. We affirm. Although Santana may seek habeas relief on his ineffective assistance claim, he started in the wrong forum. His petition faults appointed counsel for failure to pursue an appeal. *State ex rel. Smalley v. Morgan*, 211 Wis. 2d 795, 797–99, 565 N.W.2d 805 (Ct. App. 1997), unequivocally requires defendants to raise this type of ineffective assistance claim in a *Knight*[2] petition to *this* court. That said, we emphasize that the dismissal below is without prejudice and that Santana may still file a *Knight* petition.

¶ 2.   Subsequent to Santana's convictions, he filed a notice of intent to seek postconviction relief, and the state public defender thereafter appointed counsel to represent him. Counsel twice sought orders of this court involving clarification or extension of time to file a notice of appeal or a postconviction motion. In granting the second motion, we noted that counsel had been contacted by an attorney in Massachusetts whom Santana's family had retained to explore the possibility of having Santana either deported to the Dominican Republic, his native country, or placed there through a

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] *See State v. Knight*, 168 Wis. 2d 509, 484 N.W.2d 540 (1992).

prisoner exchange program. We observed that this attorney had informed appellate counsel that exchange and deportation might not be available to Santana if postconviction matters remained pending. Following this order, counsel wrote to the Department of Corrections. His correspondence stated that Santana requested deportation and would not be pursuing postconviction relief or an appeal. Counsel subsequently closed Santana's file. Thus, his involvement in Santana's case ended sometime in or around August 1997.

¶ 3. Nearly seven and one-half years later, on December 21, 2004, Santana petitioned the circuit court for a writ of habeas corpus. Among his claims were the following. First, he asserted that counsel improperly withdrew from representation without prosecuting an appeal or filing a no-merit report. According to Santana, this inaction violated his right to assistance of appellate counsel because nobody—trial counsel, the trial court, or appellate counsel—had informed him of his appeal options, and therefore he had never waived these rights. Santana also alleged several trial errors. He challenged the sufficiency of evidence with respect to the charge for possessing cocaine with the intent to deliver and asserted that the court had not given the proper jury instruction on that charge. Moreover, he claimed a violation of his due process rights resulted from the State's use of an informant who illegally used drugs. The circuit court dismissed Santana's petition on the ground that he had not exhausted other appeal and postconviction remedies.

¶ 4. On appeal, we hold that *Smalley* governs this case and that dismissal was proper. In *Smalley*, we recognized that a *Knight* petition in this court provided

711

the proper vehicle for defendants to attack appointed counsel's failure to commence an appeal governed by WIS. STAT. RULE 809.30 or WIS. STAT. RULE 809.32, whether or not the appeal had to be preceded by a postconviction motion. *Smalley*, 211 Wis. 2d at 798–99; *see also State v. Evans*, 2004 WI 84, ¶¶ 34 n.12, 39 n.14, 273 Wis. 2d 192, 682 N.W.2d 784; *State ex rel. Ford v. Holm*, 2004 WI App 22, ¶ 9 n.4, 269 Wis. 2d 810, 676 N.W.2d 500 ("Although the allegation of ineffective assistance of counsel in this case involves the alleged actions or omissions of counsel prior to the filing of an appeal, it is nonetheless properly raised by way of a *Knight* petition in this court."), *review denied*, 2004 WI 50, 271 Wis. 2d 109, 679 N.W.2d 544 (No. 2002AP1828-W). Santana complains that counsel failed to file a no-merit appeal or to move for postconviction relief. RULE 809.32 governs no-merit appeals. Had counsel moved for postconviction relief, he would have done so pursuant to WIS. STAT. § 974.02, which is governed by the procedural rules in RULE 809.30. *See* § 974.02(1); *Evans*, 273 Wis. 2d 192, ¶ 29 (such a motion may precede or substitute for a notice of appeal and may be a prerequisite to direct appeal depending on whether the issues argued were previously raised). Thus, Santana should have brought a *Knight* petition to this court.

¶ 5. The State, citing *Smalley*, 211 Wis. 2d at 798–99, and *Ford*, 269 Wis. 2d 810, ¶¶ 36–37, observes that although this court accepts habeas petitions where appellate counsel is ineffective, we often remand to the trial court for fact finding and opines that "[i]t reasonably follows . . . that a trial court should be able to address a loss-of-direct-appeal claim in the first instance." We disagree with the State's suggestion that *Smalley* prescribes an optional procedure. First, the fact that we may often remand for fact finding says nothing about whether the circuit court is the proper

forum for determining the legal issues. Second, *Evans* strongly indicates that a convicted defendant does not have a choice of forum for his or her habeas petition:

> In *Knight*, this court stated unequivocally that "to bring a claim of ineffective assistance of appellate counsel, a defendant *must* petition the appellate court that heard the appeal for a writ of habeas corpus." Further, we expressly disavowed language from the court of appeals' decision in *State v. Flores*, 158 Wis. 2d 636, 462 N.W.2d 899 (Ct. App. 1990), which allowed such a claim to be made via a § 974.06 motion: "Because we conclude that the defendant should pursue an ineffective assistance of appellate counsel claim by petitioning the appellate court for a writ of habeas corpus, we expressly overrule any language in *Flores* that might sanction a contrary procedure.

*Evans*, 273 Wis. 2d 192, ¶ 39 (alteration in original; citations and footnote omitted). We find this language particularly telling because the court had already characterized a WIS. STAT. § 974.06 postconviction motion as "essentially the statutory substitute for a petition for writ of habeas corpus." *Evans*, 273 Wis. 2d 192, ¶ 32. We do not see how it could be proper for a defendant to pursue habeas relief in the circuit court on an ineffective assistance of appellate counsel claim when *Evans* expressly precludes him or her from pursuing a procedure that the court characterized as its "statutory equivalent." *See id.*, ¶ 34.

¶ 6.  Although we affirm the circuit court's order dismissing Santana's petition, we emphasize that he remains free to pursue the proper procedure by filing a *Knight* petition in this court. The circuit court did not say whether it intended to dismiss with or without

713

prejudice. We will construe the order as a dismissal without prejudice. First, we infer that this is the result the court intended. The order dismissed Santana's motion because he had "not taken advantage of his appellate rights or postconviction remedies available to him." Thus, it seemed to assume that other remedies remained available. Second, Santana's failure to file his petition in the right forum is a procedural defect that he can easily cure by submitting a new petition to this court. *Cf. State ex rel. Schatz v. McCaughtry*, 2003 WI 80, ¶ 36, 263 Wis. 2d 83, 664 N.W.2d 596 ("Generally, when a dismissal for failure to state a claim does not specify whether it is with or without prejudice and the defects in the dismissed complaint can be cured by a subsequent complaint, the dismissal should not be treated as a bar to the filing of the subsequent complaint.").

¶ 7.   Having acknowledged that Santana still has the option of a *Knight* petition, we note that he has also brought several other claims of error. Thus, we think it appropriate to say a few words about the proper procedural mechanisms for pursuing his various claims. We underscore the nature and significance of the *Knight* petition as a habeas petition addressing the actions of appellate counsel before this court. *See State v. Knight*, 168 Wis. 2d 509, 520–22, 484 N.W.2d 540 (1992). Nothing in *Knight* indicates that the court contemplated the use of this procedure to encompass claims of trial error that do not concern actions before this court. Thus, we cannot entertain his other claims in a *Knight* petition.

¶ 8.   Santana does, however, have other procedural avenues available. First, if he succeeds on his

*Knight* petition, we will reinstate his direct appeal rights, and he can pursue an appeal on those claims:

> [I]f a defendant files a *Knight* petition and it is determined that his appellate counsel was deficient, his direct appeal rights may be reinstated. Thus, a defendant's right to appeal will not be extinguished; on the contrary, a *Knight* petition provides the appropriate vehicle to determine if counsel was deficient so that a defendant's direct appeal rights *can* be reinstated.

*Evans*, 273 Wis. 2d 192, ¶ 59 n.21. If Santana does not prevail on his *Knight* petition (or if he chooses not to file one), he may still bring a motion for postconviction relief pursuant to WIS. STAT. § 974.06. *See* § 974.06(1); *Evans*, 273 Wis. 2d 192, ¶ 32. This second option, however, is limited to constitutional and jurisdictional claims and cannot be used to raise challenges related to sufficiency of the evidence, jury instructions, evidentiary rulings, or procedural matters. *Evans*, 273 Wis. 2d 192, ¶ 33.

¶ 9.   As for what does belong in the *Knight* petition, we observe that the procedures in WIS. STAT. RULE 809.51 apply. The petition should contain a statement of the issues and facts of controversy, the relief sought, and reasons why we should take jurisdiction. *See* RULE 809.51(1)(a)-(d); *Smalley*, 211 Wis. 2d 795 & n.7. The statement of facts should identify precisely what counsel did or failed to do. We note that the issue of waiver will also probably arise. The State has posited that Santana waived his right to bring a loss-of-direct-appeal claim by waiting seven and one-half years to seek relief. Habeas relief is an equitable remedy subject to the doctrine of laches. *Smalley*, 211 Wis. 2d at 800. Santana should be prepared to address the State's claim and to

provide a factual basis for his delay. *See id.* at 802 (petition must allege facts demonstrating that the defendant sought prompt and speedy relief).[3]

¶ 10.  Additionally, the petition must comply with the requirements of WIS. STAT. § 782.04. This statute states, in pertinent part:

> Such petition must be verified and must state in substance:
>
> **(1)** That the person in whose behalf the writ is applied for is restrained of personal liberty, the person by whom imprisoned and the place where, naming both parties, if their names are known, or describing them if they are not.
>
> **(2)** That such person is not imprisoned by virtue of any judgment, order or execution specified in s. 782.02.
>
> **(3)** The cause or pretense of such imprisonment according to the best of petitioner's knowledge and belief.
>
> **(4)** If the imprisonment is by virtue of any order or process a copy thereof must be annexed, or it must be averred that, by reason of such prisoner being removed or concealed a demand of such copy could not be made or that such demand was made and a fee of $1 therefor tendered to the person having such prisoner in custody, and that such copy was refused.
>
> **(5)** In what the illegality of the imprisonment consists.

---

[3] We note that the supreme court has a pending case, *State ex rel. Coleman v. McCaughtry*, No. 2004AP548–W, where the issue has been described as: "Did the court of appeals violate due process by applying the doctrine of laches to the petitioner's habeas corpus petition without an evidentiary hearing, where material issues of fact remain in dispute and the record is inconclusive regarding the unreasonableness of delay and the prejudice caused to the State?"

¶ 11. We wish in particular to emphasize the verification requirement, which many prisoners overlook. Verification entails signing the document in the presence of a notary public. *See Kellner v. Christian*, 197 Wis. 2d 183, 188–89, 539 N.W.2d 685 (1995). The verification requirement assures "that the statements contained therein are presented with some regard to considerations of truthfulness, accuracy and good faith," and petitions not properly verified do not meet the requirements for a valid application. *Maier v. Byrnes*, 121 Wis. 2d 258, 262–63, 358 N.W.2d 833 (Ct. App. 1984).

¶ 12. We affirm. Santana had the right idea when he sought a writ of habeas corpus, but he started in the wrong place. He should have brought a *Knight* petition to this court to get his direct appeal rights reinstated. Because the dismissal of his petition is without prejudice, he still has the option of doing so. If he is not successful or chooses to forego a *Knight* petition, he may still seek postconviction relief pursuant to Wis. Stat. § 974.06 on other constitutional claims.

*By the Court.*—Order affirmed.